**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOHNNY M.,**

      **Plaintiff,**

v.                                       **Civil Action 2:22-cv-1670
Judge Michael H. Watson
Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Johnny M., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.     BACKGROUND**

In April 2019, Plaintiff protectively filed his applications for DIB and SSI, alleging that he was disabled beginning October 15, 2002, due to arthritis in his right shoulder, diabetes, neck surgery, partial blindness in both eyes, depression, and anxiety. (Tr. 487–504, 524). After his applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on November 16, 2020. (Tr. 57–78). The ALJ denied Plaintiff's applications in a written decision on December 11, 2020. (Tr. 36–56). When the Appeals Council denied review, that denial became the Commissioner's final decision. (Tr. 1–7).

Next, Plaintiff brought this action. (Doc. 1). As required, the Commissioner filed the administrative record, and the matter has been fully briefed. (Docs. 8, 13, 15, 16).

A.   **Relevant Statements**

The ALJ summarized Plaintiff's statements to the agency and hearing testimony as follows:

[Plaintiff] testified he has neck pain every day, at least part of the day, and about anything makes his neck hurt, and the pain will continue for two hours. He underwent two neck surgeries; however, he continues to experience numbness in the arms and legs. He has back pain when he bends. The pain continues for three to four hours. [Plaintiff] has had injections and physical therapy, which did not help and he has never utilized a TENS unit. He has used a heating pad but this did not help, and stated his pain medications help. [Plaintiff] stated he takes Hydrocodone, Gabapentin, Trazadone, which help his pain but cause drowsiness. [Plaintiff] testified he has swelling in his eye and wears glasses, and this helps him see. He has episodes when it is harder to see about two times a week, lasting all day and he takes steroids that helps some. However, when he has an episode, he cannot see well enough to read or drive. [Plaintiff] estimated he could walk 10 to 15 minutes, stand 20 minutes, sit 25 minutes and lift 10 pounds. He cannot lift his arms over his head and loses grip, but he can use buttons and zippers. [Plaintiff] testified he has no trouble with his self-care, and he does household chores such as running a sweeper, washing laundry, cooking and shopping. During the day, he watches television to pass time.

Upon questioning by [Plaintiff]'s representative, he testified his doctor, that performed his neck surgery, told him not to lift over 10 pounds. He needs to change positions because his legs go numb, and has to lie down during the day for an hour.

(Tr. 46).

B.   **Relevant Medical History**

The ALJ summarized Plaintiff's medical records as to his physical impairments as follows:

The medical record shows an x-ray of [Plaintiff]'s right shoulder in April 2019 showed AC arthritis and some possible tendinopathy (Exhibit 7F, pg. 12). [Plaintiff] made complaints of right shoulder pain on a physical consultative exam in July 2019, and stated it was difficult to lift his right dominant arm over his head, but he had no radiation of pain and no loss of grip. On exam, he had decreased abduction by about 30 degrees and mild crepitus in the acromioclavicular joint, but otherwise normal range of motion. David Provaznik, D.O. diagnosed mild right shoulder arthritis (Exhibit 6F).

During examination in August 2019, [Plaintiff] had pain in the right posterior shoulder with limited range of motion, worse with movement of his arm. He was diagnosed with acute pain of right shoulder and was given an injection of Toradol. On a follow-up exam in the same month, his shoulder exam was within normal limits (Exhibit 7F). He received physical therapy from November 2019 to January

2020 for right shoulder pain, and on discharge reported his right upper extremity strength had improved (Exhibit 12F, pg. 1).

[Plaintiff]'s first cervical fusion was performed in 2009 (Exhibit 6F). During an agency physical consultative exam in August 2017 with Timothy Burns, D.O., [Plaintiff] was diagnosed with low back pain and cervical degenerative disc disease (status-post fusion at C4, C5 and C6), which was consistent with findings of flatted cervical lordosis, cervical pain with range of motion, and lumbar tenderness as well as positive x-rays of the lumbar and cervical spine (Exhibit 1F). [Plaintiff] did undergo physical therapy for his neck pain in December 2017. An MRI of the lumbar spine, taken in January 2018, revealed degenerative changes of the lumbar spine with minimal stenosis at L2-3; and an MRI of the cervical spine showed right paracentral disc extrusion at C6-7 resulting in stenosis and severe narrowing on the right, and status-post discectomy and fusion from C4-C6. [Plaintiff] underwent surgery in February 2018 for exploration of fusion, removal of hardware at C5-6, and anterior cervical decompression and fusion at C6-7 (Exhibit 3F).

On August 30, 2019, [Plaintiff]'s neck, musculoskeletal, and neurologic evaluations were all unremarkable. He was prescribed Hydrocodone, Promethazine, and Gabapentin for pain (Exhibit 7F). An x-ray of the cervical spine in August 2019 was positive for multilevel postsurgical changes of the spine, unchanged alignment without acute abnormality, and mild C3- 4 degenerative changes (Exhibit 11F, pg. 29). On evaluation in November 2019, he had no tenderness in the cervical or lumbar spine with full range of motion and strength, normal reflexes, negative straight leg raise testing, no edema, and normal gait (Exhibit 11F, pg. 4). He returned to physical therapy in November 2019 for neck pain and on discharge in January 2020, reported no improvement in symptoms (Exhibit 12F). However, he had no neurological focal deficits noted on exam in June and September 2020. [Plaintiff] continued to be prescribed pain medication (Exhibits 13F, pg. 2; and 14F, pg. 3).

[Plaintiff] received conservative treatment for bilateral macular and retinal edema from March to August of 2018. In June 2018, his visual acuity was 20/30 on the right and 20/25 on the left; in July 2018, his vision was 20/30 on the right and 20/30 on the left; and in August 2018, his vision was 20/40 on the right and 20/40 on the left. H was prescribed Acyclovir, Prednisone and Methotrexate, but in August 2018, he was told to stop taking Prednisone (Exhibit 4F).

On consultative exam in July 2019, Dr. Provaznik diagnosed [Plaintiff] with uveitis, with decreased peripheral vision with a visual acuity of 20/40 on the right, 20/50 on the left; 20/40 bilateral vision with correction, and failed color test, as well as some diminished peripheral vision about 60 degrees bilaterally (Exhibit 6F). [Plaintiff] did undergo laser cataract surgery on the left eye in November 2019 and on follow-up, reported left eye vision is a little better. He was prescribed [Prednisone] and Methotrexate and his corrected vision was 20/60 on the right and 20/50 on the left, with no improvement on manifest refraction (Exhibit 9F). In

3

> October 2020, his correction visual acuity was 20/40-2 on the right and 20/40 on the left. Julie Lew, M.D. stated [Plaintiff]'s chronic cystoid macular edema has been controlled on medication for the past two years (Exhibit 17F).

(Tr. 46–48).

### C. Medical Opinions

The ALJ evaluated the medical opinions pertaining to plaintiff's physical impairments as follows:

> The agency physical medical consultant[ ]s, Yeshwanth Bekal, M.D. and Linda Hall, M.D., at the initial and reconsideration levels of determination, limited [Plaintiff] to light work with frequently kneeling and crouching; occasionally crawling; never climbing ladders/ropes/scaffolds; limited to frequent overhead reaching with the right arm; and avoidance of all exposure to work hazards (Exhibits 1A, 2A, 5A and 6A). The undersigned finds the agency physical medical consultants' assessments persuasive, as they are consistent with the treatment history and supported by the objective medical findings. [Plaintiff] has received conservative treatment for complaints of back and shoulder pain, and neck pain following two cervical fusions and physical therapy for neck pain. Examination has shown reduced range of motion in the cervical spine and right shoulder, right shoulder crepitus, and lumbar tenderness (Exhibits 7F and 12F). However, additional visual limitations are given in consideration of uveitis cystoid macular edema.

(Tr. 48).

> Julie Lew, M.D. opined [Plaintiff] is capable of lifting/carrying 30 pounds occasionally and 20 pounds frequently; occasionally stooping/bending and crouching/squatting; and avoiding ordinary workplace hazards. She further opined [Plaintiff] can work with small/large objects involved doing sedentary work, but would be off task 10% of the time, and could perform occasional work activities that involve near/far acuity, depth perception, accommodation, color vision, and field of vision due to chronic cystoid macular edema. However, she further notes that his condition has been controlled on medication for the past two years (Exhibit 17F). The undersigned finds Dr. Lew's opinion is not persuasive as it is not consistent with the treatment history and is not supported by objective medical findings. While [Plaintiff] did have two cervical spine surgeries, he return[ed] to work following the first surgery, and showed improvement following the second surgery in February 2018. He has since shown restriction in cervical spine range of motion, but has no weakness, sensation deficit, or atrophy in the upper or lower extremities. He has some crepitus and range of motion restriction in the right shoulder; but he retains normal strength in the right arm and there are no restrictions in his ability to manipulate objects. Furthermore, this opinion is inconsistent with [Plaintiff]'s activities such as volunteering with a boy scout troop including

4

>weekend camping and meetings, driving, cooking, cleaning, and washing laundry. Finally, [Plaintiff]'s visual impairment is controlled with medication and he retains 20/40 vision with correction (Exhibit 1F, 2F, 3F, 6F, 7F, 8F, and 14F).

(Tr. 49).

### D. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirement through December 31, 2022. (Tr. 42). He has not engaged in substantial gainful employment since September 7, 2017, one day after his Title II benefits ended. (*Id.*). The ALJ also determined that Plaintiff has the following severe impairments: right shoulder arthritis, degenerative disc disease of the cervical and lumbar spine, and uveitis cystoid macular edema. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 45).

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

>After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently kneel; occasionally stoop and crouch; and never crawl or climb ladders, ropes, or scaffolds. He can frequently reach overhead with the right upper extremity; and should never work at unprotected heights or around dangerous moving machinery. [Plaintiff] can occasionally perform work activities involving near and far visual acuity and depth perception.

(*Id.*).

As for the allegations about the intensity, persistence, and limiting effects of Plaintiff's symptoms the ALJ found that Plaintiff's symptoms "are not entirely consistent." (Tr. 48).

The ALJ determined that Plaintiff has no past relevant work. (Tr. 49). The ALJ relied on testimony from a Vocational Expert ("VE") to determine that given Plaintiff's age, education, work experience and RFC, he was able to perform work that existed in significant numbers in the national economy, such as a nut and bolt assembler, cleaner, and motor polarizer. (Tr. 50).

5

Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since September 7, 2017. (Tr. 51).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

In his Statement of Errors, Plaintiff contends: (1) that the ALJ erred at Step 2 by failing to properly find that Plaintiff's right knee joint instability, chronic kidney disease, monoclonal gammopathy of unknown significance, and chronic rib fractures were medically determinable impairments; further compounding that failure, the ALJ erred in failing to consider limitations, or to state the basis for including no limitations, related to these impairments in constructing the RFC; (2) that under 20 CFR § 404.935(b)(3), the ALJ should have admitted certain additional evidence which was submitted less than five business days before the scheduled hearing date. (Docs. 13 and 16).

6

The Commissioner counters that the ALJ did not make a reversible error at step two. The ALJ found that Plaintiff had severe impairments, moved on to the following steps of the sequential evaluation process, and her decision at step five that Plaintiff was not disabled was supported by substantial evidence. In addition, the Commissioner argues that, despite Plaintiff's argument, he failed to follow the governing regulations which require claimants to timely inform the Commissioner of all written evidence five days prior to the administrative hearing. (Doc. 15).

**A. Step 2**

Plaintiff argues that the ALJ erred when he determined that Plaintiff's right knee joint instability, chronic kidney disease, monoclonal gammopathy of unknown significance, and chronic rib fractures were not medically determinable impairments. (Doc. 13 at 10–16). Along with this argument, Plaintiff contends the ALJ has erred in failing to consider limitations and failing to state the basis for including no limitations related to these impairments in constructing the RFC. (*Id.*).

At step two, the ALJ must consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[,]" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921. Additionally, to be classified as "medically determinable," an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing

7

the RFC." *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017).

The finding of at least one severe impairment at step two is merely a threshold inquiry, the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "And when an ALJ considers all of a [plaintiff]'s impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Id*. (quoting *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-1511, 2021 WL 972444, at *10 (S.D. Ohio Mar. 16, 2021) (finding no error despite ALJ's failure to designate plaintiff's neuropathy as a medically determinable or severe impairment where the ALJ discussed plaintiff's neuropathy and considered its impact on plaintiff's ability to work).

In such a situation, the ultimate inquiry is whether substantial evidence supports the RFC fashioned by the ALJ. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 416.945(a). An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at * 1–2 (July 2, 1996). The Sixth Circuit has explained that "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

8

Here, Plaintiff argues that the ALJ erred by not designating his right knee joint instability, chronic kidney disease, monoclonal gammopathy of unknown significance, and chronic rib fractures as severe impairments. (Doc. 13 at 16). The Plaintiff correctly notes that the ALJ did not expressly categorize these as severe impairments. (Tr. 42 (ALJ listing Plaintiff's severe impairments)). Yet, the ALJ found that Plaintiff had multiple severe impairments, including "right shoulder arthritis, degenerative disc disease of the cervical and lumbar spine, and uveitis cystoid macular edema…." (*Id*.). As such, the ALJ determined Plaintiff had satisfied the step two threshold inquiry and moved on with the analysis. *See Fisk*, 253 F. App'x at 583. The ALJ's conclusion that Plaintiff's right knee joint instability, chronic kidney disease, monoclonal gammopathy of unknown significance, and chronic rib fractures were not severe impairments does not constitute reversible error at step two.

Plaintiff further contends that the ALJ erred in not discussing his right knee joint instability, chronic kidney disease, monoclonal gammopathy of unknown significance, and chronic rib fractures in step two or the subsequential analysis and disability determination. (Doc. 13 at 16–18). Indeed, the ALJ did not address these impairments anywhere in her decision. However, this amounts to harmless error. Plaintiff briefly mentioned right knee pain in his testimony upon prompting from his attorney. (Tr. 73–74). And, while the ALJ did not expressly address knee pain in her decision, she limited Plaintiff's RFC to account for mobility issues. (Tr. 45 ("[H]e can frequently kneel; occasionally stoop and crouch; and never crawl or climb ladders, ropes, or scaffolds. He . . . should never work at unprotected heights or around dangerous moving machinery.")). Notably, Plaintiff does not assert how the ALJ could have further limited the RFC to account for his right knee instability, nor does he claim any limitations could have been added to account for his chronic kidney disease, monoclonal gammopathy of unknown significance, and

9

chronic rib fractures. Further, beyond mere diagnoses, the medical record does not contain any findings of symptoms or impairments caused by the chronic kidney disease, monoclonal gammopathy of unknown significance, and chronic rib fractures. As such, substantial evidence supports the ALJ's RFC determination.

### B. Admittance of Untimely Evidence

For his second assignment of error, Plaintiff argues that under 20 CFR § 404.935(b)(3), the ALJ should have admitted certain additional evidence which was submitted less than five business days before the scheduled hearing date. (Doc. 13 at 19–20). Specifically, Plaintiff points to a Functional Capacity Evaluation performed three days prior to the hearing on November 13, 2020 and received on the date of the hearing—November 16, 2020. (Tr. 79–85). Plaintiff argues that because the evidence was requested timely and was not known to Plaintiff's counsel before the hearing, the ALJ had a duty to consider the evidence. (*Id.*). In response, the Commissioner argues that Plaintiff has demonstrated no good cause for his failure to adhere to the regulatory deadline. (Doc. 15 at 11).

The relevant Social Security regulation is 20 C.F.R. § 404.935, which says:

- (a) When you submit your request for hearing, you should also submit information or evidence as required by § 404.1512 or any summary of the evidence to the administrative law judge. Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of this section apply.

- (b) If you have evidence required under § 404.1512 but you have missed the deadline described in paragraph (a) of this section, the administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:

    (1) Our action misled you;

10

> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:
>
>> (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
>>
>> (ii) There was a death or serious illness in your immediate family;
>>
>> (iii) Important records were destroyed or damaged by fire or other accidental cause; or
>>
>> (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

20 C.F.R. § 404.935. This regulation is in place for good reason. The Social Security Administration must adjudicate millions of claims per year. Absent deadlines such as 20 C.F.R. § 404.935, claimants would have to wait even longer for their cases to be adjudicated because the Administration's resources would be further burdened with late submissions of medical records. These rules and regulations aimed at creating efficiencies of the adjudication process are in the interest of not only the ALJ but also the claimant.

Here, there is no dispute that Plaintiff disclosed the evidence at issue during the November 16, 2020 hearing. (Tr. 40, 61–62). Accordingly, the burden falls to Plaintiff to demonstrate that one of the circumstances of 20 C.F.R. § 404.935(b) applies.

Plaintiff argues that the ALJ should have admitted the evidence pursuant to the exceptions listed at 20 CFR § 404.935(b)(3). (Doc. 13 at 19). But Plaintiff fails to assert what exception applies in this case. Based upon the Undersigned's own review of the record, none of the exceptions to the five-day rule apply. In particular, Plaintiff's circumstances do not fall into the

11

exception for when the plaintiff "actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing." 20 CFR § 404.935(b)(3)(iv). Plaintiff contends that it was impossible for him to obtain the records five days before the hearing, because the Evaluation was conducted only three days before the hearing. (Doc. 13 at 19). This is true; however, Plaintiff offers no explanation as to why the Evaluation was scheduled after the deadline to submit evidence. Plaintiff had over eighteen months between filing his application with the Social Security Administration and the relevant hearing in front of the ALJ. (*See* Tr. 79–85, 487–504, 524). In all that time, up until November 11, 2020, he could have obtained a Functional Capacity Evaluation and submitted the report to the ALJ. And, even if the Evaluation could only be conducted three days before the hearing, Plaintiff could have informed the ALJ immediately that a report from this Evaluation was pending, instead of waiting until the day of the hearing to do so. (Tr. 40, 61–62). In other words, Plaintiff was not diligent in scheduling and then obtaining the Evaluation report, or even minimally informing the ALJ in a timely manner that evidence was still outstanding. The Undersigned finds no reason to believe the ALJ improperly applied 20 C.F.R. § 404.935. Accordingly, the ALJ did not err in using her discretionary power to exclude the Evaluation from the evidentiary record.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting

12

authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: December 1, 2022           /s/ Kimberly A. Jolson
                                 KIMBERLY A. JOLSON
                                 UNITED STATES MAGISTRATE JUDGE